388 S.E.2d 313

**Mary Elizabeth HULMES, etc., who Sues by her Mother and Next Friend, Karen VEST; and Karen Vest, Individually**

v.

**S. Eileen CATTERSON, M.D.; and Alessandra Kazura, M.D.**

No. 18991.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1989.

Richard E. Hardison, Beckley, for Mary Elizabeth Hulmes, Karen Vest.

W.H. File, Jr., File, Payne, Scherer & Brown, Beckley, for Alessandra Kazura, M.D.

David L. Shuman, Shuman, Annand & Poe, Charleston, for S. Eileen Catterson, M.D.

PER CURIAM:

Mary Elizabeth Hulmes, an infant, by her mother and next friend, Karen Vest, and Karen Vest, individually, appeal from the Circuit Court of Raleigh County's order dated May 18, 1988. That order dismissed with prejudice, under Rule 37(b) of the West Virginia Rules of Civil Procedure, the plaintiffs' medical malpractice action against Alessandra Kazura, M.D., because

the plaintiffs had failed to comply with a discovery order.[1]

On or about July 5, 1985, Karen Vest took her six-year-old daughter, Mary Elizabeth Hulmes, to the Rhodell Pediatric Clinic for medical examination and treatment of physical symptoms which included vomiting, fever, and abdominal pain. S. Eileen Catterson, M.D., accepted Mary as a patient, began medical treatment, and then allowed her to go home. Nonetheless, the child continued to suffer from the symptoms and returned for treatment on July 8, 1985. She was then attended by Dr. Kazura, who diagnosed gastroenteritis. Dr. Kazura treated Mary again on July 10, 1985. Because her condition did not improve, Mary returned to the Clinic on July 12, 1985. Once again she was examined by Dr. Catterson, who diagnosed prolonged gastroenteritis and had her admitted to Raleigh General Hospital. Dr. Catterson then consulted with a surgeon who diagnosed appendical abscess with perforation and a possible leaking abscess and recommended surgery. On July 16, 1985, exploratory surgery revealed peritonitis with a ruptured appendix and an abscess. Following the operation, the girl required additional hospitalization and surgery.

On July 2, 1987, the plaintiffs filed a civil action for medical malpractice against Drs. Catterson and Kazura. The complaint alleged that the doctors' failure to properly diagnose and treat Mary resulted in a ruptured appendix with peritonitis. The doctors filed separate answers generally denying the allegations.

On July 21, 1987, Dr. Kazura filed a set of thirty-nine interrogatories and a request for production of documents. The plaintiffs did not object to the interrogatories. On January 13, 1988, Dr. Kazura filed a motion to compel answers to the interrogatories and a motion to compel production.[2] After a hearing, by order entered February 10, 1988, the circuit court granted Dr. Kazura's motion to compel and instructed the plaintiffs to answer the discovery request on or before February 24, 1988. Counsel for the plaintiffs signed the order and then forwarded it to counsel for Dr. Kazura to sign and mail to local counsel for Dr. Catterson.

On March 9, 1988, counsel for Dr. Kazura, believing that the order had not been entered, asked counsel for the plaintiffs to sign another order. Counsel for the plaintiffs complied with the request, and a second order compelling responses to discovery was entered. Plaintiffs still did not respond to the interrogatories or to the request for production of documents.

On April 27, 1988, Dr. Kazura filed a motion for sanctions against the plaintiffs for failure to comply with the order compelling discovery.[3] Dr. Kazura asked the

---

1. The plaintiffs' action against S. Eileen Catterson, M.D., was not dismissed. Discovery proceeded after the circuit court dismissed Dr. Kazura.

2. Apparently, the defendant was making a motion to compel discovery pursuant to Rule 37(a), W.Va.R.Civ.P. This motion was not necessary. When a party entirely fails to respond to a set of interrogatories, sanctions can be imposed directly under Rule 37(d), and a motion under Rule 37(a)(2) is not required. *Shreve v. Warren Assoc., Inc.,* 177 W.Va. 600, 604 n. 5, 355 S.E.2d 389, 393 n. 5 (1987); Syllabus Point 2, *Prager v. Meckling,* 172 W.Va. 785, 310 S.E.2d 852 (1983); C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2285 (1970). *See also* 4A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 37.02[3] (1988).

3. Rule 37(b)(2), W.Va.R.Civ.P., states, in pertinent part:
   "Sanctions by Court in Which Action is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rules 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to supplement as provided for under Rule 26(e), or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others are the following:

   \*　　\*　　\*　　\*　　\*　　\*

   "(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

   \*　　\*　　\*　　\*　　\*　　\*

   "In lieu of any of the foregoing orders or in addition thereto, the court shall require the

court to dismiss the action, require the plaintiffs to pay reasonable expenses, including attorney's fees, and impose any other sanctions the court determined to be appropriate. A hearing was set for May 6, 1988.

When plaintiffs' counsel failed to appear at the scheduled hearing, the circuit court, after learning that plaintiffs' counsel was in the courthouse, sent the bailiff to find him. After plaintiffs' counsel was brought before the trial court, he stated that he had not received notice of the hearing. Instead of continuing the matter, the trial court conducted the sanctions hearing immediately. When plaintiffs' counsel was questioned as to why he had failed to comply with the discovery order, he responded: "The big reason is because I don't, I don't have an expert's report which is mostly what the interrogatories are directed to. As far—I am speaking off the top of my head, Your Honor I don't even—."

The circuit court found that plaintiffs' counsel was guilty of gross negligence by failing to answer the interrogatories and by failing to comply with the court order. Consequently, the trial court rendered a default judgment against the plaintiffs. On May 18, 1988, the plaintiffs made a motion to set aside the default judgment and requested an opportunity to develop a record on why they had failed to comply with discovery. In an order dated June 1, 1988, the circuit court denied the plaintiffs' request.

▉▉▉ On appeal, the plaintiffs argue that the interrogatories required answers from a medical expert and that at the time of the May hearing, the plaintiffs had not retained an expert. In Syllabus Point 3 of

*Michael v. Henry*, 177 W.Va. 494, 354 S.E.2d 590 (1987), we held:

"Under *W.Va.R.Civ.P.* 26(b)(4)(A)(i), a party is required to disclose to another party the identity of persons whom that party intends to call as expert witnesses at trial only when that party has determined within a reasonable time before trial who his expert witnesses will be."

The plaintiffs contend that our holding in Syllabus Point 3 of *Michael v. Henry, supra,* controls.

It appears that none of the parties informed the court of this case. In *Michael,* interrogatories were addressed to the plaintiff in a medical malpractice suit. The interrogatories asked the plaintiff to identify each expert he would call at trial and to identify the subject matter of the expert's testimony, including a summary of each opinion. The plaintiff responded by stating that the experts were unknown at that time. Upon a motion for sanctions for the failure to disclose the expert's identity, the trial court awarded attorney's fees against the plaintiff and held that the plaintiff could not depose the defendant doctors until he answered the interrogatories. Justice Neely, speaking for a unanimous court, outlined the law in this area derived, in part, from federal sources which have a similar rule, stating in conclusion that the "great majority of courts that have construed this rule agree that expert witnesses need not be identified until the later stages of discovery." [4] 177 W.Va. at 498, 354 S.E.2d at 594.

In the present case, most of the defendant's interrogatories were directed at obtaining detailed information about the ex-

party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

**4.** The opinion cited these authorities:

"*See Jackson v. Kroblin Refrigerator Express, Inc.,* 49 F.R.D. 134, 135 (N.D.W.Va.1970) and cases there cited; Annot., 19 A.L.R.3d 1114 (1968). The Advisory Committee Note deal-

ing with Rule 26(b)(4)(A) of the *Federal Rules of Civil Procedure* states in pertinent part: 'Discovery is limited to trial witnesses, and may be obtained only at a time when the parties known who their expert witnesses will be.' 48 F.R.D. at 504. Rule 26(b)(4)(A) 'is framed in terms of expectation, and therefore when an interrogatory is served before the party has determined who will be retained as an expert, the answer can state that fact.' 4 Moore's Federal Practice, ¶ 26.66[3] at 26-[415] (1984)." 177 W.Va. at 498, 354 S.E.2d at 594.

pert's testimony.[5] We believe that under *Michael,* the reasonable time before trial rule was applicable. It does not appear that a pretrial conference or trial date had been set. We also note that since *Michael* and the order in this case, Rule 16 of the West Virginia Rules of Civil Procedure has been amended, effective October 31, 1988, to provide for a variety of scheduling and planning techniques, including time limits for completion of discovery. Rule 16(b)(3), W.Va.R.Civ.P.

We stated in *Bell v. Inland Mut. Ins. Co.,* 175 W.Va. 165, 332 S.E.2d 127, 134, *cert. denied,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985), that "the rendering of judgment by default as a sanction under Rule 37(b) should be used sparingly and only in extreme situations." (Citations omitted). *Cf. Chandos, Inc. v. Samson,* 150 W.Va. 428, 146 S.E.2d 837 (1966). We then explained that " '[t]he essential reason for the traditional reluctance of the courts to default a party is the "policy of the law favoring the disposition of cases on their merits." *Richman v. General Motors Corp.,* 437 F.2d 196, 199 (1st Cir.1971) (citing cases).' " 175 W.Va. at 172, 332 S.E.2d

at 134, *quoting from Affanato v. Merrill Bros.,* 547 F.2d 138, 140 (1st Cir.1977).

We do not suggest that *Michael* can be read to countenance any amount of delay in responding to discovery. Furthermore, it is limited to discovery of experts. The adoption of amendments to Rule 16 makes it plain that a scheduling order controlling time on ·discovery is appropriate. We believe, however, that *Michael* is controlling in this case and that consequently the court erred in dismissing Dr. Kazura from the action. Although we have found the dismissal of plaintiff's case to be unwarranted, we do not foreclose the trial court from imposing less severe sanctions under Rule 37 on remand.

Accordingly, we reverse the judgment of the Circuit Court of Raleigh County.

Reversed and Remanded.

---

**5.** There were thirty-nine numbered interrogatories, several with subparts. Interrogatories 1 through 9 dealt exclusively with experts and their qualifications, publications authored, opinions to be offered, facts upon which such opinions were based, and medical texts that were relied upon. Interrogatories 11 through 24 and 29 asked about the medical condition of the infant plaintiff. These interrogatories sought information on why the plaintiffs claimed that the diagnosis and treatment of the infant was improper, on who would so state, and on what alternative procedures would have been proper. These questions also called for a medical expert's opinion. Interrogatories 25, 26, 30 through 33, and 35 and 36 required an expert opinion on whether the injuries were permanent and as to future medical care. Interrogatories 37 through 39 requested certain documents from the plaintiffs.