395 S.E.2d 491

**Delbert NUTTER, Dana Nutter, and Edna Nutter, Committee and next friend of Linda Mullins, and Thomas Mullins**

v.

**Honorable Elliott E. MAYNARD, Judge of the Circuit Court of Mingo County; Wyeth Laboratories, and Wyeth Laboratories, Inc.; Nicholas County Health Department; Nicholas County Family Planning Clinic; William Lester, M.D.; and Robert E. Fleer, M.D.**

No. 19460.

Supreme Court of Appeals of West Virginia.

June 21, 1990.

Marion E. Ray, Hunt & Wilson, Charleston, for Delbert Nutter, Dana Nutter, and Edna Nutter.

Edgar A. Poe, Shuman, Annand & Poe, Charleston, Gregory B. Null, Breckinridge, Davis, Null & Sproles, Summersville, for Robert E. Fleer, M.D.

Bryan A. Cokeley, Steptoe & Johnson, Charleston, for William Lester, M.D.

W.E. Mohler, II, Charleston, for Nicholas County Health Dept.

Pamela D. Tarr, Jackson & Kelly, Charleston, for Wyeth Laboratories.

Jeffrey M. Wakefield, Kay, Casto, Chaney, Love & Wise, Charleston, for Nicholas County Family Planning Clinic.

WORKMAN, Justice:

This case is before this Court pursuant to petitioners' request for a writ of prohibition and mandamus.[1] Petitioners seek to prohibit the Circuit Court of Mingo County, the Honorable Elliott E. Maynard presiding, from enforcing an order entered on December 1, 1989, which directed that petitioners must provide defendants with written reports from each expert witness expected to testify at trial. The petitioners further seek this Court to prohibit Judge Maynard from continuing the trial until September 19, 1990, because the parties had agreed and stipulated to a trial date of April 2, 1990. We grant the writ insofar as the written expert reports, but find that the court did not abuse its discretion in continuing the trial date and deny the writ in that regard.

The underlying case is a medical malpractice and products liability action evolving from the use of the birth control pill Lo–Ovral–28 by petitioner Linda Mullins who now suffers from akinetic mutism due to four massive strokes. Petitioners have alleged in their complaint that Doctors William Lester and Robert E. Fleer were negligent in prescribing the birth control pill and failing to adequately warn the petitioner Linda Mullins of the dangers of such pill; that the Nicholas County Health Department and the Nicholas County Family Planning Clinic were negligent in failing to employ adequately trained personnel to warn the petitioner Linda Mullins of potential side effects associated with such pill; that Wyeth Laboratories and Wyeth Laboratories, Inc. negligently failed to inspect, warn, inform, instruct and apprise the petitioner Linda Mullins or her physician of the danger of such pill; and that such alleged negligence was the proximate cause of the petitioner Linda Mullins' injuries and damages.

We first take up the expert report issue. During the course of discovery, interrogatories were served upon the petitioners asking for the identity of any expert witness they expected to call at trial, the subject matter about which each such expert was expected to testify, the substance of the facts and opinions to which the expert was expected to testify, and a summary of the grounds for each opinion held by such expert. This request tracked the language of W.Va.R.Civ.P. 26(b)(4)(A)(i).[2] The petitioners answered the interrogatories, periodi-

---

1. Although the petition is styled as sounding in both prohibition and mandamus, petitioners' prayer for relief includes only a request for relief by way of prohibition on the two issues raised.

2. A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. W.Va.R.Civ.P. 26(b)(4)(A)(i).

cally supplementing the answers with the names of additional experts, in the following manner:

1. Dr. ＿＿ is expected to testify concerning the oral contraceptive Lo–Ovral–28 and the adverse effects of Lo–Ovral–28 on Linda Mullins.

2. Based on the facts of this case, it is Dr. ＿＿'s opinion that young women are likely to have cerebrovascular malformations and other kinds of bleeding episodes and birth control pills do, by alteration of the estrogen-progesterone ratios, alter the clotting system and lead to the precipitation of a clotting episode.

3. Dr. ＿＿ will rely upon his experience, skill and medical [or pharmacological] training in offering his testimony. Dr. ＿＿ will also rely upon his review of relevant medical literature, relevant medical history, and other relevant information discovered or ascertained during the litigation of this matter.

4. Dr. ＿＿ is expected to offer an opinion that it was the deviance from the standard of care of practice to prescribe birth control pills given the facts and situations surrounding Linda Mullins' medical history.

5. Dr. ＿＿ is expected to offer an opinion as to the adequacy/sufficiency of the product warning contained in the package insert/label. Dr. ＿＿ is expected to testify that the package insert and detailed label were insufficient to apprise a lay person of the risks, damages and hazards, and side effects associated with the use of defendant Wyeth's product Lo–Ovral–28.[3]

The discovery process in this case did not run smoothly and efficiently. The filing of answers to respondents' interrogatories spanned a time period from December 12, 1987, to December 5, 1989. Respondent Fleer served interrogatories on the petitioners on August 12, 1987, and received the last set of supplemental answers to those interrogatories on December 5, 1989. Respondent Nicholas County Family Planning Clinic served interrogatories on the petitioners on January 28, 1988, and did not receive answers until December 21, 1988. Supplemental answers followed on February 3, 1989, and December 5, 1989. Respondent Wyeth Laboratories and Wyeth Laboratories, Inc. served interrogatories on March 11, 1988, and did not receive answers until December 21, 1988. Supplemental Answers followed on January 26, 1989, February 3, 1989, and October 5, 1989. Furthermore, numerous changes in petitioners' representation may have created a substantial part of the delay with regard to the preparedness of this case for trial. It appears the respondents were somewhat frustrated by the length of time it took to receive answers to their interrogatories, as well as what they perceived to be the insufficiency of such answers.

At a status conference on November 6, 1989, discussion arose concerning the substance of the interrogatory answers regarding the petitioners' expert witnesses.[4] Doubt was raised by both defense counsel and the court with respect to whether an expert would be able to testify that Lo–Ovral–28 caused the petitioner Linda Mullin's current condition. The court also expressed concern over the funds defense counsel would have to expend to depose petitioners' experts prior to trial, especially since no expert reports had been submitted from petitioners' experts. In an order entered December 1, 1989, the court directed that petitioners' counsel must designate

---

**3.** Answer number one was given with reference to Doctors Teitelbaum, Oppenheim, O'Donnell, Heck and Covington. Answer number two was given with reference to Doctors Teitelbaum, Oppenheim, O'Donnell, Heck and Covington. Answer number three was given with reference to Doctors Teitelbaum, Oppenheim, O'Donnell, Heck, Loftus and Cunitz. Answer number four was given with reference to Doctor Oppenheim. Answer number five was given with reference to Doctors Teitelbaum, Covington, Loftus and Cunitz.

**4.** A transcript of the proceeding was not included in the record before this Court due to the fact that a court reporter was not present at the status conference. However, an affidavit was filed by Marion E. Ray, counsel for petitioners, detailing what transpired at that conference. Nothing in response thereto having been filed in this case, this recitation of what transpired is based on that affidavit.

within thirty days each expert "upon whom they intended to rely at trial to establish causation, deviations from accepted standards of care, or liability, and provide respondents with a report from each such designated expert on that expert's stationery containing the expert's opinions and a summary of the expert's basis for each opinion ..." Failure to comply would result in the expert's exclusion at trial. The judge further held that each respondent must designate any expert witness they intended to use, and submit a report containing the same information within sixty days of receipt of the petitioners' expert witness reports.

The petitioners assert that the answers to the interrogatories provided to the respondents met the statutory requirement found in Rule W.Va.R.Civ.P. 26(b)(4)(A)(i). Furthermore, the petitioners contend that if the answers provided were too general, incomplete or evasive, the proper procedure would have been for the respondents to file a motion to compel more complete answers under W.Va.R.Civ.P. 37(a)(2).[5] No such motion was ever filed by respondents. In contending that the court did not abuse its discretion by ordering the submission of reports from petitioners' expert witnesses, the respondents rely on W.Va.R.Civ.P. 26(b)(4)(A)(ii) which permits the court upon motion [6] to "order further discovery by other means...." *Id.* Respondents contend that the court acted within its discretion under the rule and argue that it was not unreasonable for the lower court to require plaintiff below to produce an expert to say that the Lo–Ovral–28 caused the plaintiff's current condition.

■ Although review of discovery matters is not generally appropriate through extraordinary remedies, we have previously "granted extraordinary relief where a discovery order presents a purely legal issue

in an area where the bench and bar are in need of guidelines:...." *State ex rel. Bennett v. Keadle,* 175 W.Va. 505, 334 S.E.2d 643, 646 (1985). We deem the issue before us today to be a discovery issue appropriate for review under that standard, since the question of whether the right to order "discovery by other means" in W.Va. R.Civ.P. 26(b)(4)(A)(ii) gives the trial judge discretion to order reports from expert witnesses has not previously been decided by this Court. Courts in some jurisdictions have answered this question in the affirmative, holding that "discovery by other means" can include requiring experts to submit written reports. *See Mann v. Newport Tankers Corp.,* 96 F.R.D. 31 (1982) (where original interrogatory answers were improper, plaintiff was required to produce expert reports); *In re IBM Peripheral EDP Devices Antitrust Litigation,* 77 F.R.D. 39 (1977) (strong showing made that defense counsel needed expert reports in order to prepare for cross-examination); *State ex rel. Miller v. Superior Court,* 159 Ariz. 21, 764 P.2d 756 (1988), *aff'd,* 159 Ariz. 567, 769 P.2d 1013 (1989) (reports from experts listed as trial witnesses discoverable without consideration of substantial need test); *Phillips v. District ex rel. Ct. Second Judicial Dist.,* 194 Colo. 455, 573 P.2d 553 (1978) (en banc) (the policy of Rule 26(b)(4)(A) favors discovery, but decision is ultimately left to sound discretion of trial judge); *Sea Colony West Phase I Condominium Ass'n, Inc. v. Sea Colony, Inc.,* 438 A.2d 1233 (Del.Super.Ct.1981) (reports from expert witnesses which were prepared for earlier litigation that was terminated were discoverable).

Other courts have determined that Rule 26(b)(4)(A)(ii) does not envision production of written reports absent unique circumstances or substantial hardship. In *Breedlove v. Beech Aircraft Corp.,* 57 F.R.D. 202 (1972), the United States District Court for

---

**5.** Respondent Fleer cited *Hulmes ex rel. Vest v. Catterson,* 182 W.Va. 439, 388 S.E.2d 313 (1989) (per curiam) for the proposition that a motion to compel filed by defendants was not necessary. This argument is misplaced, because in the *Hulmes* decision no answers whatsoever had been filed. 182 W.Va. at 441, 388 S.E.2d at 315. In the case before us, the issue is the proper

procedure to follow where answers have been served, but those answers are deemed by opposing counsel to be incomplete or insufficient.

**6.** It appears from the affidavit of counsel for petitioners that the court entered the order directing expert reports sua sponte.

the Northern District of Mississippi held that depositions and interrogatories may be used to elicit answers to the questions posed in Fed.R.Civ.P. 26(b)(4)(A)(i). 57 F.R.D. at 204–05. The court determined that discovery of expert testimony is limited to information received through the two methods of depositions and interrogatories, because Fed.R.Civ.P. 26(b)(4)(A)(ii) "does not envisage the production of written documents or reports on which expert opinions professedly rely" unless unique or exceptional circumstances are shown to exist which would make it equitable to require such reports. 57 F.R.D. at 205. In *Wilson v. Resnick,* 51 F.R.D. 510 (1970), the United States District Court for the Eastern District of Pennsylvania found that the *"only* method by which a party may obtain discovery of facts known and opinions held by expert witnesses is service of interrogatories on the party retaining that expert." *Id.* at 511. Although the court did agree that a judge may order "discovery by other means" under Fed.R.Civ.P. 26(b)(4)(A)(ii), it concluded that the entire procedure set up by Fed.R.Civ.P. 26(b)(4) would be defeated if an expert's opinion could be obtained upon a "mere allegation that answers to interrogatories were insufficient...." 51 F.R.D. at 511

■ In *State Highway Comm'n v. Havard,* 508 So.2d 1099 (Miss.1987), the Supreme Court of Mississippi dealt with the issue of evasive or incomplete answers being given to interrogatories served pursuant to Rule 26(b)(4)(A)(i). The court held that if an answer to an interrogatory regarding an expert witness who will testify at trial is deemed insufficient by opposing counsel, some means of notice of such insufficiency must be given to the opposing party in order to let them know that additional information is desired. *Havard,* 508 So.2d at 1104. The court indicated that a motion to compel under Rule 37(a) accompanied by a charge that the answer was incomplete was the most appropriate means to accomplish that purpose. *Havard,* 508 So.2d at 1104. We agree with this proposition. Therefore, based upon the facts before us, we find that if a party believes insufficient answers were given to

interrogatories served under W.Va.R.Civ.P. 26(b)(4)(A)(i), the proper procedure under the rule is to file a motion to compel more complete answers pursuant to W.Va.R. Civ.P. 37(a)(2). Although a trial judge may have discretion to compel "discovery by other means" pursuant to W.Va.R.Civ.P. 26(b)(4)(A)(ii) in unique or exceptional circumstances, such circumstances do not exist where the means available under the clear terms of the rule have not been exhausted.

■ The second issue in this case concerns the petitioners' request to prohibit the circuit court from changing the trial date from April 2, 1990, to September 19, 1990. At the November 6, 1989 status conference, counsel for the petitioners informed the court that the parties had agreed to a trial date of April 2, 1990, and that this had been cleared with the Nicholas County Circuit Clerk's office. In the order entered December 1, 1989, however, the trial was set for September 19, 1990. It is important to recognize that Judge Maynard was appointed by the West Virginia Supreme Court of Appeals July 20, 1989, to oversee this case due to a voluntary recusal of the Honorable James H. Wolverton, Judge of the Twenty-eighth Judicial Circuit. Thus, the April 2, 1990 trial date had been set prior to Judge Maynard's appointment. At the status conference, Judge Maynard expressed concern that discovery might not be completed by April 2, 1990. Furthermore, Judge Maynard had already scheduled other matters on his docket for April 2, 1990. Under these circumstances, we find that the court did not abuse his discretion by changing the trial date. "It is well settled as a general rule that the question of continuance is in the sound discretion of the trial court, which will not be reviewed by the appellate court, except in case it clearly appears that such discretion has been abused." Syl. Pt. 1, *Levy v. Scottish Union & National Ins. Co.,* 58 W.Va. 546, 52 S.E. 449 (1905).

We therefore grant the writ of prohibition with respect to the provision requiring the preparation of expert witness reports,

but deny the petitioners' request for prohibition as to the trial date.

Writ granted as moulded.