468 S.E.2d 181

**Barbara WALLIS, Plaintiff Below, Appellant,**

v.

**Roger D. WALLIS, Defendant Below, Appellee.**

**No. 22955.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 23, 1996.

Decided Feb. 15, 1996.

---

Patrick L. Cottrell, Steven L. Miller, Cross Lanes, for Appellant.

James M. Casey, Point Pleasant, for Appellee.

PER CURIAM:

In this appeal from an order of the Circuit Court of Mason County distributing property in a divorce proceeding, the appellant, Barbara Wallis, claims that the family law master and the circuit court erred in refusing to continue her case to afford her an opportunity to conduct additional discovery on the nature and extent of assets possessed by her husband. After reviewing the issue presented and the record filed, this Court cannot conclude that error was committed. The judgment of the circuit court is, therefore, affirmed.

In August, 1993, the appellant, Barbara Wallis, filed a divorce complaint against her husband, the appellee, Roger Wallis, who was a farmer. In the complaint she sought, among other things, equitable distribution of the parties' marital property.

After the filing of the complaint, the action was bifurcated, and separate proceedings

were conducted on the distribution of the parties' property. In the course of those proceedings, each party filed financial disclosure forms required by the court, and a hearing was set on the distribution question. That hearing was not held on the day originally set for the hearing because the appellant's attorney requested a continuance because of a schedule conflict and because he had not had time to analyze income tax returns which had only recently been tendered to him by the appellee's attorney.

A hearing was conducted on July 21, 1994, and at that hearing the family law master disposed of certain minor issues between the parties but ruled that:

> [T]he record shall remain open in this action until August 4, 1994, for submission of additional evidence and/or a request by the Plaintiff's counsel for additional cross-examination on the records provided by the Defendant this date only.

For reasons not documented in the record, the matter was further continued until September 8, 1994, despite the earlier direction that the record would be open only until August 4, 1994. In conjunction with this enlargement of time, the appellant's attorney submitted a motion which stated:

> New and substantial evidence previously unknown to the plaintiff has come to her attention regarding the commission of adultery and concealment of assets by the defendant. Because this evidence could significantly affect her case, the plaintiff requests that the court allow her to present evidence in the form of testimony on this issue.

At the September 8, 1994 hearing, the appellant called Patricia Gail Dingess as a witness. Ms. Dingess had become acquainted with the appellee in February, 1992, and testified that she had engaged in a relationship with him commencing on July 2, 1992, and continuing for approximately two years. She testified that during this period she took frequent trips with him to Union Stockyards in Hillsboro, Ohio. On two of these trips, cattle owned by the appellant's husband were delivered to Union Stockyards for sale. Ms. Dingess testified that "Roger [the appellee] told me that the proceeds from the sale were going to be set aside so that he could hide it from Barbara [the appellant] and the Court." She also testified that between August and December, 1993, she accompanied the appellee while he delivered hogs to Rolfe's Custom Meats in Milton, West Virginia, for a man named Joe Leadmon. According to Ms. Dingess:

> Roger [the appellee] told me that he was delivering the hogs and that he was delaying the payment from the sale of the hogs from Joe Leadmon and from Mr. Rolfe so that he could hide the money from Barbara and the Court.

Ms. Dingess also testified that she had personally borrowed $5,000.00 in one hundred dollar bills from the appellee and that on other occasions the appellee had talked about holding amounts of cash [which had not been revealed in the financial disclosures in the case]. "Roger said ... Roger told me that he had assets hid in other states and that he had a lot of other financial things that a lot of people don't know about." She further indicated that the appellee proposed to set up a corporation and "he wanted to transfer the equipment and drain (inaudible) the assets into the corporation to take it away from Barbara and the Court." When asked whether the appellant's husband had ever given any indication of how much money he was hiding, Ms. Dingess replied: "Roger told me he had already made his first million and was well into the second but as far as an actual dollar amount, no." Ms. Dingess' testimony indicated that she had certain documents impacting on the case in her possession until August 10, 1994, when "Roger beat me up and took them."

The appellee also testified at the September 8, 1994 hearing. The appellee admitted meeting Gail Dingess early in 1992 and admitted having a relationship with her for a few months prior to the hearing. He also admitted that he had taken Ms. Dingess to Union Stockyards in Hillsboro, Ohio, but he denied that he had ever loaned her $5,000.00 in cash. He stated that he could not recall making any statements to her regarding the deferring of income for the purpose of concealing it from the court or from his wife, the appellant. He admitted that Union Stock-

yards did hold a small sum for him, but he suggested that this was usual practice in dealings between the stockyard and farmers. He explained that farmers often did not have time to deliver stock to be sold, then wait for the actual sale to be conducted, and further wait for a check to be written. He indicated that it was customary that checks be written two or three days after a sale and to be picked up by the farmer on his next trip to the stockyard. A similar procedure was often followed with Rolfe's Custom Meats. When pointedly asked whether the financial disclosures filed earlier with the court omitted money being held by Union Stockyards in Hillsboro, Ohio, Rolfe's Custom Meats, or anybody else, the appellee stated "No." The appellee admitted that he had formed a corporation for his farm business but indicated that the action was done for liability purposes rather than to conceal assets.

In the course of the September 8, 1994 hearing, the appellee's attorney moved the court to direct Union Stockyards in Hillsboro, Ohio, to furnish a record of its dealings with the appellee in 1992, 1993, and 1994. He also requested that the court require the production of records from Rolfe's Custom Meats and certain other parties. When asked to respond, the attorney for the appellee stated that he was not aware how the West Virginia court could compel Union Stockyards in Ohio or the other parties to make such disclosures. He further stated that the family law master had records on everything that the appellee had.

At the conclusion of the hearing, the family law master indicated that the record would be left open for thirty days so that the appellant's attorney could attempt to procure the additional records which he believed would be useful. The law master said further:

And if there is a need for further hearing, then we'll schedule the same at that time. Otherwise, at the end of thirty days I will make a ruling on this case.

It further appears that certain blank subpoenas were issued to the appellant's attorney, either at this time or earlier, to assist in the procurement of the additional information.

More than thirty days later, on October 11, 1995, the family law master received correspondence from the appellant's attorney requesting a continuance for further discovery. The family law master took the request under consideration, but by letter dated October 14, 1994, ruled that the evidence was closed and that the appellant had not complied with the prior court directives relating to additional evidence. Specifically, the family law master stated:

Further, at the hearing held herein on September 8, 1994, the Plaintiff was given thirty (30) days to provide additional evidence unto the Family Law Master, not thirty (30) days in which to prepare an Order for presentation to the Family Law Master.

Inasmuch as the Plaintiff has failed to provide any additional evidence within the thirty (30) days provided by the Family Law Master, the record in this action is now considered closed.

Thereafter, the family law master prepared and submitted recommended findings of fact and conclusions of law. In those findings of fact and conclusion of law, the family law master recommended a marital distribution which was based upon the evidence previously presented by the parties.

The appellant's attorney timely filed exceptions to the proposed findings of fact and conclusions of law with the Circuit Court of Marion County. The exceptions were basically grounded on the claim that the findings of fact and conclusions of law "did not conform to the evidence presented at the hearings on this matter."

After considering the family law master's recommendation and the appellant's exceptions, the circuit court entered a final order in this matter on January 4, 1995. The court stated:

After considering the matter, the Court finds that the plaintiff has failed to show how the proposed findings, conclusions and recommendations of the Family Law Master dated November 4, 1994, violate West Virginia Code Chapter 48A-4-20. Accordingly, said findings, conclusions and recommendations are ORDERED AFFIRMED

and judgment shall be entered in accordance therewith.

In an opinion letter announcing its decision, the circuit court stated, in essence, that the family law master had provided the appellant with extensive opportunities to adduce additional evidence relating to the question of hidden assets. The court recognized that Gail Dingess had testified as to the new facts but that the appellee had contested and denied those facts. The court said:

> On September 8, 1994, Gail Dingess did testify as to the new facts. The defendant also testified and denied the new damaging evidence. The plaintiff offered no other evidence. No one else testified notwithstanding the plaintiff's prior receipt of the six blank subpoenas.

The court went on to state:

> At the conclusion of the September 8, 1994 hearing, the plaintiff was still unsatisfied and requested thirty additional days to present more new evidence to the Family Law Master. The Family Law Master again agreed to the plaintiff's request and gave the plaintiff additional time.
>
> Though having the thirty additional days, the plaintiff submitted nothing during the period. On October 11, 1994, the Family Law Master received from the plaintiff's attorney a proposed order compelling more discovery from the defendant. The Family Law Master declined to sign the proposed ex parte order further prolonging this matter and reminded the plaintiff that since nothing further was received during the thirty day extension, a final decision would be forthcoming.

The court concluded:

> The plaintiff now claims that the family law master is wrong and at fault after the Family Law Master allowed the plaintiff to reopen the case, heard the plaintiff's additional evidence and gave the plaintiff thirty more days to produce even more evidence which the plaintiff failed to do.
>
> Reopening the case for the plaintiff, receiving the plaintiff's evidence, then giving the plaintiff thirty more days to come up with more evidence may have been an abuse of the Family Law Master's discretion, but if so, it was an abuse harmful to

the defendant and certainly not to the plaintiff. Blame for the failure of the plaintiff to present all of her evidence when given the opportunity can't be shifted to the Family Law Master.

As previously noted, the appellant claims in this appeal from the circuit court's order that the trial court erred in not continuing this case and in not remanding it for the taking of additional evidence on the question of concealment of marital assets.

■ Recently, in syllabus point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), this Court summarized the standard of review to be followed in assessing rulings of a circuit court and family law master on equitable distribution questions in a divorce proceeding. The Court stated:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

In the present equitable distribution case, the preeminent issue is whether the family law master and the trial court erred in failing to continue the present case and in failing to grant the appellant additional discovery to develop the evidence relating to the parties' property.

■ This Court has traditionally recognized that a motion for continuance is addressed to the sound discretion of the trial court. *Cross v. Cross*, 185 W.Va. 414, 407 S.E.2d 720 (1991); *Nutter v. Maynard*, 183 W.Va. 247, 395 S.E.2d 491 (1990); and *Templeton v. Templeton*, 179 W.Va. 597, 371 S.E.2d 175 (1988). The actual position is summarized in syllabus point 1 of *Cross v. Cross, supra*, as follows:

> " 'It is well settled as a general rule that the question of continuance is in the sound discretion of the trial court, which will not be reviewed by the appellate court, except

in case it clearly appears that such discretion has been abused.' Syl. pt. 1, *Levy v. Scottish Union & National Ins. Co.*, 58 W.Va. 546, 52 S.E. 449 (1905)." Syl. pt. 2, *Nutter v. Maynard*, [183] W.Va. [247], 395 S.E.2d 491 (1990).

In the *Cross* case, the Court analyzed a situation where a party to a divorce proceeding requested and received several continuances in order to obtain legal advice and to develop the evidence relating to the distribution of a pension account. Thereafter, the case was continued several times and ultimately the court ruled on the issue raised in a manner unfavorable to the appellant. On appeal, the appellant claimed that the trial court had abused its discretion in denying her an additional continuance to develop her case. This Court stated:

> Clearly, the circuit court provided the appellant several opportunities to retain counsel to represent her in this case. The hearing to determine the appellant's share of the appellee's pension benefits was continued on several occasions over a period of nearly a year. Thus, on the basis of the record before us, we cannot conclude that the circuit court abused its discretion in denying the appellant's motion for a continuance.

185 W.Va. at 417, 407 S.E.2d at 723.

■ Similar to the situation in the *Cross* case, the family law master in the present case on a number of occasions continued the case to afford the parties an opportunity to further develop the evidence on the marital distribution questions. Hearings were scheduled for, or conducted on, July 21, 1994, August 4, 1994, and September 8, 1994. At the final hearing conducted on September 8, 1994, the family law master specifically gave the appellant thirty additional days in which to provide additional evidence.

The indisputable evidence shows that prior to the September 8, 1994 hearing the appellant's attorney was aware of the additional evidence, but prior to that hearing and during it he did little, other than call Gail Dingess, to discover the evidence. During the thirty-day period after the September 8, 1994 hearing, the appellant did not submit additional evidence, and even after the thirty-day period did not submit such evidence. Although the appellant suggests that during the thirty-day period her attorney submitted a motion for additional discovery, the appellant, or her attorney, had previously been granted the right to obtain additional evidence by subpoena and had not availed herself of that opportunity. In fact, the evidence indicates that in the thirty-day period the appellant's attorney did nothing to develop the evidence other than make the motion for additional time for discovery.

The facts in this case suggest that, for whatever reason, the appellant did nothing to further develop the evidence after the September 8, 1994 hearing, but the family law master was extraordinarily liberal in granting additional time in which the appellant might do so, as noted by the trial court. The cases previously cited indicate that the granting of a motion for continuance is discretionary with the trier of the case. Under all the circumstances appearing in this record, this Court cannot conclude that the family law master or the circuit court abused their discretion in denying the appellant's last request for an additional continuance and for discovery or that the family law master or circuit court erred in concluding these proceedings.[1]

---

1. In analyzing the facts of this case, the Court is aware that it is stated in syllabus point 1 of *Hamstead v. Hamstead*, 178 W.Va. 23, 357 S.E.2d 216 (1987), *overruled on other grounds, Roig v. Roig*, 178 W.Va. 781, 364 S.E.2d 794 (1987), that:

   *W.Va.Code*, 48-2-33 [1984], requires a full disclosure of one spouse's financial assets to the other spouse at the time of divorce, and contemplates a meaningful hearing on the subject of equitable distribution of property at which the spouse submitting financial data may be cross-examined concerning the nature, origin and amount of assets.

   *See also Lambert v. Lambert*, 180 W.Va. 317, 376 S.E.2d 331 (1988).

   In the present case, the appellee made what appears to be a complete asset disclosure on prescribed forms. This disclosure was accompanied by income tax returns. It also appears that the family law master went to great lengths to afford the appellant's attorney an opportunity to examine the disclosure documents, to develop evidence to refute the facts which they showed, and to cross-examine the appellee.

For the reasons stated, the judgment of the Circuit Court of Mason County is af-firmed.

Affirmed.