484 S.E.2d 635

**STATE of West Virginia ex rel. MELANIE KAYE P., Petitioner,**

v.

**Honorable A. Andrew MacQUEEN, III, Judge of the Circuit Court of Kanawha County, and Rex A., Respondents.**

No. 23872.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 25, 1997.

Decided March 14, 1997.

Mary M. Downey, Charleston, for Petitioner.

W. Cassel Pulliam, Mitchell & Murray, Charleston, for Rex A.

A. Andrew MacQueen, Judge, Pro Se.

Robin R. Louderback, Charleston, Guardian ad Litem.

PER CURIAM:

Melanie Kay P.[1] seeks to prohibit a psychological evaluation of her eight-year old daughter that was ordered by the respondent, the Honorable A. Andrew MacQueen, Judge of the Circuit Court of Kanawha County at the request of Rex A., the girl's father. In the underlying case, a post-divorce custody/visitation dispute, Melanie Kay P. maintains that given the five other evaluations that were conducted of her young daughter concerning the allegation that Rex A. sexually abused his daughter in 1993, the potential for harm outweighs any need or reason for another evaluation. Rex A., who maintains he did not abuse his daughter, contends that the purpose of the evaluation is to discuss with the child her feelings about visitation with her father and paternal grandparents and not to "dredge up" the alleged sexual abuse. Because of the great potential for harm and the limited value of a sixth examination in these circumstances, we grant a writ prohibiting the requested examination.

I.

*Facts and Background*

The underlying suit is a post-divorce custody/visitation matter. After a twenty-six month marriage, Melanie P. and Rex A. were divorced on February 26, 1992. The parties have one child who was born before the marriage on November 26, 1988. In October 1993, Melanie P. began denying Rex A. visitation with their daughter, who was then almost five years old. The visitation was denied because of allegations that Rex A. had sexually abused his daughter during visitation.

Because of a change in the child's behavior and the child's statement that her father had acted inappropriately toward her, Melanie P. took her daughter to the child's pediatrician, Geeta Jayaram, M.D. Dr. Jayaram referred the child to Kathleen V. Previll, M.D., Associate Professor of Pediatrics at the Charleston Division of West Virginia University, who found positive evidence of chlamydia, a sexually transmitted disease. In January 1994, the child began counseling with Peggy Dennision, M.A., a child sexual abuse therapist. Ms. Dennision reported that the child disclosed sexual abuse by her father and recommended on January 28, 1994 that "the court insure safety to … [the child] by mandating no contact whatsoever with her father…." The child was interviewed by the State Police in June 1994 during which the child again said that her father had molested her.[2] The child was also evaluated by Christina M. Arco, Ph.D., a child psychologist who in November 1995 interviewed the child twice and administered psychological tests. In Dr. Arco's independent evaluation, she noted that because of the remoteness in time between her interview and the alleged sexual abuse, she "must defer to those professionals who initially evaluated and had the contact with … [the child] shortly after the initial allegations surfaced."[3]

On January 7, 1994, Rex A. filed a petition for modification and Melanie P. filed a cross

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See Phillip Leon M. v. Greenbrier County Bd. of Educ.,* 199 W.Va. 400, 484 S.E.2d 909 (No. 23349 Dec. 13, 1996); *In re: Katie S. and David S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996). In this case, the petitioner, Melanie Kaye P., is the mother of R.A., an infant under the age of eighteen (18) years.

2. According to Rex A.'s response, "the attendant criminal charges [against Rex A.] … have been dismissed upon the motion of the Office of the Prosecuting Attorney of Kanawha County…."

3. Although Rex A. maintains that he has not been afforded the opportunity to have an expert of his choosing evaluate his daughter, in her reply to Rex A.'s response to the petition, Melanie P. notes that "[t]he request for Dr. Arco to interview the child was at the request of Mr. Pulliam [counsel for Rex A.]." We note that because the question is presented by way of a petition for a writ of prohibition, the record in this matter is limited.

petition for modification on March 1, 1994; both petitions are seeking custody and visitation with the child. The final divorce order failed to address these issues. According to Rex A.'s response, except for two afternoons of supervised visitation in May 1996, he has not visited with his daughter since October 1993. On November 12, 1996, Rex A. filed a motion to have a professional of his choice interview/evaluate his daughter. By order entered on November 20, 1996, the circuit court granted the motion.[4] Maintaining the potential harm outweighs any need for an additional examination, Melanie P. petitioned this Court to prohibit enforcement of the order. A rule to show cause was issued on December 13, 1996, returnable on February 25, 1997.

## II.

### Discussion

In *State v. Delaney*, 187 W.Va. 212, 417 S.E.2d 903 (1992), we adopted a "compelling need or reason" test to determine when additional examinations of victims in sensitive matters could be required. We weighed the defendant's right to present his or her own evidence against the victim's right to privacy and adopted guidelines for balancing these rights. The guidelines are set forth in Syllabus Point 3 of *Delaney*, which provides:

> In order for a trial court to determine whether to grant a party's request for additional physical or psychological examinations, the requesting party must present the judge with evidence that he has a compelling need or reason for the additional examinations. In making the determination, the judge should consider: (1) the nature of the examination requested and

the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use.

The threshold requirement for an additional examination is the presentation of "a compelling need or reason...." Syllabus Point 3, in part, *Delaney*. In this case, Rex A. maintains: (1) he "has been permitted no interviews at all;" (2) the purpose of the examination is to assess "the credibility of those reporting the disclosures and the propriety of visitation by ... [him] and his parents in the future;" and (3) no other evidence on "[t]he credibility of the child's mother and the counselor" is available to him.[5] Once the need for the examination has been demonstrated, the circuit court should consider the *Delaney* factors.

Rex A. stresses the following *Delaney* factors, namely the limited nature of the one-hour examination, the lack of information about visitation and credibility, and the lack of trauma because of the professionalism of his expert. However, Melanie P. maintains that for a child of tender years, another interview about the remote incident would be very traumatic and detrimental. In support of her argument, Melanie P. notes that over a year ago in November 1995, Dr. Arco found the incident too remote for an interview with the young child to be helpful. Dr. Arco, in a deposition taken on November 4, 1996, said that another interview would be "anti-therapeutic" for the child and had "minimal" likelihood of "getting reliable evidence."[6]

4. The November 20, 1996 order stated, in pertinent part:

> Upon hearing arguments the Court does ORDER the following:
> (1) Motion For Interview Of ... [the child] is GRANTED.... (emphasis in original).

5. During oral argument, counsel for Rex A. maintained that only two issues would be addressed during the requested interview: first, whether the child desires to resume visitation with her father; and second, whether the child desires to resume visitation with her paternal grandparents. However, counsel for Rex A. also

indicated that the paternal grandparents currently had visitation with the child. This position seeks a more limited interview than that requested below and granted by the circuit court.

6. The deposition of Dr. Arco contained the following testimony:

> Q. (Ms. Downey) Now, understanding that, and, in fact, fading the memory is a healthy characteristic for a child?
> A. (Dr. Arco) Absolutely. And that is why, again, sometimes the legal course of proceedings when children have to be interviewed and

■ Discovery questions are "generally within the discretion of the trial court." *Delaney,* 187 W.Va. at 215, 417 S.E.2d at 906. *See* Syllabus Point 8, *State v. Audia,* 171 W.Va. 568, 301 S.E.2d 199, *cert. denied,* 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983)("Subject to certain exceptions, pre-trial discovery in a criminal case is within the sound discretion of the trial court"); Syllabus Point 1, in part, *Nutter v. Maynard,* 183 W.Va. 247, 395 S.E.2d 491 (1990) ("trial judge does have discretion to compel 'discovery by other means' " in appropriate circumstances); Syllabus Point 1, in part, *Bell v. Inland Mut. Ins. Co.,* 175 W.Va. 165, 332 S.E.2d 127, *cert. denied,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985)("imposition of sanctions ... is within the sound discretion of the court ...").

■ In this case, the circuit court issued an order requiring the additional examination. Although the order was brief, the circuit court submitted a response to our rule to show cause outlining its reasons for authorizing the additional examination.[7] The circuit court, emphasizing the gravity of the issues and importance of the evidence to those issues, found that the "possible harm to the child is outweighed by the potential probative value of the evidence developed." The court noted that because neither party intended to call the child to testify in the dispute, the experts had a pivotal role and "the father had not had the opportunity to obtain the benefit of an expert." The court also found that "it is unlikely that a carefully conducted assessment by a well trained and sensitive psychologist will add significantly to a child's trauma."

We find that the circuit court abused its discretion in disregarding the testimony of Dr. Arco, an independent psychologist who had interviewed the child twice in November 1995. Dr. Arco's interview, conducted about two years after the alleged incidents, was too remote for her to form an independent conclusion about the allegations. Dr. Arco said

---

re-interviewed or as in Rachel's case, with the criminal things pending, it's often anti-therapeutic because the goal of therapy is to move the child ahead and to move off this and not to continually necessitate the child having to dwell on it.

Q. That leads me to the next question. Mr. Pulliam wants to send her to a therapist to relive this again so that the memory is re-experienced again and I believe that you just stated that that was anti-therapeutic?

A. It always is. In a situation where children are having to do this, it always goes against goals of therapy. As I had mentioned earlier in response to his questions, you have to take into consideration the child's well-being at that point in time and all those other factors, but it always causes them to re-experience part of that and it is not therapeutic for any child.

Q. So, one factor in an argument against another therapist again evaluating this child, it's always anti-therapeutic. It may be more so for some children and less so for others, but it's always anti-therapeutic?

A. Yes, I believe so.

\* \* \* \* \* \*

Q. And in addition, we were talking about yet another year and when you interviewed the child and during your interview that was two years post disclosure, even a person of your caliber and experience in the area of sexual abuse in children, had a very difficult time in getting reliable date; is that correct? What would another year do to that?

A. I just think that would be further complicated, further blurred information. The reliability of that, outcome of that interview I would question. I mean, I questioned my own at two years. I think that would be highly problematic for any expert in the field.

Q. So on one hand we're talking about anti-therapeutic result for further questions concerning this, plus a therapist that, perhaps, from what we've heard today, does not have a great deal of experience in this field and on top of that, we've got three years to deal with and the likelihood of getting reliable evidence or reliable information is minimal. So we have a detrimental effect on the child and the likelihood of getting anything meaningful out of further questioning this child is minimal, at best. Is that what you're saying?

A. That is my professional belief. Those were my professional concerns. Again, her treating therapist would be best able to speak to the detriment to the child and the reliability. If ... [the child] had difficulty remembering and talking with me about it two years and they have not been talking about it recently in therapy, it would be very difficult, I think, for this third person to get any more reliable information.

7. In her response to the petition, the guardian ad litem for the child noted that she objected in circuit court to another evaluation. The guardian ad litem maintains that "based upon the number of evaluations and the inconclusive evaluation by Dr. Arco," there is no compelling need for an additional evaluation.

that an interview with an expert more than three years after the alleged incidents would be too remote to provide the evidence sought by the circuit court. Dr. Arco noted that another examination would be detrimental no matter how sensitive and highly trained the interviewer because "it always causes them to re-experience part of that." *See* note 5 for part of Dr. Arco's testimony. Given the slight chance that the examination would yield substantially new evidence and the significant potential of harm to the child, we find that the circuit court abused its discretion in ordering the examination and should have denied the father's request.

For the above stated reasons, the petition for a writ of prohibition is granted. The case shall proceed below in accordance with the principles set forth in this opinion.

Writ granted.

STARCHER and McHUGH, JJ., concur, in part, and dissent, in part, and reserve the right to file a separate opinion.

STARCHER, Justice, concurring, in part, and dissenting, in part:

Although I agree with the majority that an additional examination concerning the allegations of sexual abuse is not warranted in these circumstances, I dissent because I find that the father has demonstrated a compelling need for an expert interview exploring the issue of visitation by the child with her father and paternal grandparents. Based on this compelling need, I would grant a moulded writ allowing a brief interview between the father's expert and the child limited solely to the visitation issue and would, unlike the majority, not block all inquiry by an expert chosen by the child's father.[1]

In his brief the father indicates that his purpose in seeking the examination is to help determined credibility of the allegations and to explore the child's reaction to visitation. During oral argument, counsel for the father indicated that the proposed brief examination would focus exclusively on the issue of visitation. If the expert interview is limited to exploring the child's reaction to visitation with her father and her paternal grandparents, I believe that the *Delaney* standards would allow the interview. *See* Syllabus Point 3, *State v. Delaney*, 187 W.Va. 212, 417 S.E.2d 903 (1992).

In this case, there is no evidence addressing the question of renewed visitation and the child's reaction to resuming contact with her father and paternal grandparents.[2] Given the lack of evidence, the father has a compelling need or reason for information on visitation. Having established that a compelling need exists, the *Delaney* factors indicate that such a limited examination should be allowed because the child's privacy rights would not be severely compromised. Such an interview would not require the child to re-examine the sexual abuse, but would focus on the present relationships and potential visitation, less emotional topics. Second, even a young child has an opinion on visitation, and an interview on the subject is not remote in time. Finally, the interview would have probative value on the issue of visitation and there appears to be no other information available. The visitation issue should not be ignored by the majority because give the child's age visitation will likely remain an outstanding issue for several years.

Based on the foregoing, I would grant a moulded writ allowing an interview by an expert chosen by the father; however, the interview would be limited to one hour and to the issue of a visitation. Because of the child's tender years, if need be, the interview could be conducted in such a way that the mother or her representative could monitor

1. Although I am reluctant to interfere with the circuit court's exercise of discretion, because of the compelling circumstances of this case, I would limit the additional examination of the child. The granting of a moulded writ, which comports with the father's position in oral argument, follows the spirit of the circuit court's response and does not severely compromise the circuit court's decision allowing an interview.

2. Because this case arises from a petition for a writ of prohibition, the complete record is not before this Court. The material presented with the petition focuses on the sexual abuse allegations and there is no mention of the effect on the child of renewed visitation.

the interview to assure that the limitations are honored.

A moulded writ would address the petitioner's concern that the allegations of sexual abuse would be rehashed to the determent of her daughter, the father's concern for evidence on the issue of visitation and the circuit court's concern about "what the nature of any continuing relationship between the child and father should be." Based on the foregoing, I dissent from the total ban needlessly imposed by the majority.

I am authorized to state that Justice McHUGH joins in this separate opinion.