Tucker, Judge.
The declaration charges, that Philip Fitzhugh drew a bill of exchange in favour of Samuel Love, or order, on certain persons in Great Britain. That after-wards, on the same day, Presley Thornton, at the special instance ¡and request of the said Philip, and in order to give a credit to the said bill of exchange, and to induce Love to receive it from Fitzhugh, and in consideration of Love’s paying to Fitzhugh the value in current money, and actually *9 received by Fitzhugh, did, by his endorsement, made on the said bill, according to the custom of merchants, endorse the same for payment to the said Samuel Love: which was partly paid, and protested for the balance. Whereupon this suit is brought upon the act of assembly. Plea, nil debei, and issue. The bill of exceptions states a copy of the bill and protest made by a notary public in Liverpool, made, as he alledges, from the original hill and the protest thereof, made in London : By which it appears, that there was no special undertaking on the part of Thornton, to warrant the payment; but a mere endorsement of his name, prior to that of Samuel Love, in whose favour the bill was drawn. Tho jury found a verdict for tho plaintiff, if the court should be of opinion that the bill of exchange and the copy of the protest, (the original appearing to have been lost,) are sufficient to support the plaintiff’s action.
The question referred to tho court by the jury, so nearly resembles that which must have occurred to the court itself upon the declaration, that it may be regarded as, in substance the same. Which, is this, Whether Presley Thornton is an endorser of thebill in the sense and meaning of the custom and usage of merchants, or not ?
A bill of exchange may be defined an open letter of request, addressed by one person to a second, desiring him to pay a sum of money to a third, or to his order; or it may be made payable to hearer. Tho person who makes the bill, is called the drawer: lie to whom it is addressed, tho drawee; and if he undertakes to pay it, he is then called the acceptor: The person to whom it is ordered to be paid, is called the payee; and, if he appoints another to receive the money, that other is called the endorsee, as the payee is, in respect to hitn, the endorser. Kyd's Bills ,Ew. 3, 4.
Endorsement is a term known in law, which by the custom of merchants, transfers the property of the bill to the endorsee. Cunningh. Bills, 57. 3 Bac. Ab. 609. 4 Bac, Ab. 703.
*10 Bills payable to bearer are transferred by delivery. But to transfer those payable to order, as this bill is, it is necessary, in addition to delivery, that there should be something by which the payee may appear to express his order. This additional circumstance is an endorsement. Kyd, 88.
Every transfer implies a property in the person transferring, or an authority to make it, given by him in whom the property is vested. In this case, it is not pretended that Thornton ever had any property in the bill; nor was he the agent of any person having a property in the bill. He, therefore, was not an endorser according to the custom of merchants.
At the time he wrote his name on the bill, it was incapable of being transferred, but by the previous endorsement of Love the payee. Thornton was neither drawee nor payee, nor assignee nor endorsee, at that time. His endorsement, therefore, was a mere nullity, according to the custom of merchants. Upon every other ground, it was a nudum pactum. He received no consideration for warranting the payment of the bill, nor is any legal consideration charged. He was, therefore, not liable for the bill.
The action is joint. The plea is joint. The judgment is joint. It cannot be severed in this action. Thornton, then, not being liable, the judgment is erroneous, and must, I conceive, be wholly reversed. No opinion is, therefore, necessary as to the validity of the evidence. I shall only say, an attested copy by a notary public in New York or Norfolk, would have been just as good evidence, as this copy by a notary in Liverpool, whose attestation, as it re spects a bill of exchange on LondoD, and protested there, is perfectly extra official; and, consequently, no evidence. If the original were lost, why was not an attested copy produced from the office of the notary in London, who made the protest?
Fleming, Judge, concurred that the judgment ought to be reversed; for the case was not like that of Call v. Scott, *11 4 Call, 402; because, there, the consideration for the endorsement expressly appeared in the proceedings; and, consequently, the endorsers were clearly liable.
Carrington, Judge.
Thornton was neither payee, nor had any interest in the bill; and, therefore, he was not an endorser within the meaning of the act of assembly, allowing an action of debt against the endorser: nor was he liable upon the bill in any action, as there was no consideration for the endorsement proved, .in which respect, it differs from the case of Call v. Scott: for, in that case, the consideration for the endorsement appeared in the proceedings; and, therefore, the whole court thought the endorsers liable. Neither Mr. Washington's memorandum of the agreement to change the current money into sterling, nor the notarial copy of the protest ought to have been allowed to go to the jury in this case: and, upon the whole, 1 think that the judgment is erroneous; and that it ought to be reversed.
Lyons, President.
The declaration contains no ground for an action of debt upon the act of assembly against Thornton ; for if he had been liable at all, an action upon the case would have been the proper remedy. But he was not liable; for it is not proved that there was any consideration for his endorsement; and, therefore, it is not like the case of Call v. Scott: for, in that case, the consideration appeared in the proceedings. The notarial copy of the copy ought not to have been allowed to go to the jury in the present case; for there is nothing to shew, that a more authentic copy might not have been procured. I concur that the judgment should be reversed.