# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 18-0140** (Taylor County 16-F-52)

**Robert Anthony Chester,**
**Defendant Below, Petitioner**

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Robert Anthony Chester, by counsel Jeremy B. Cooper, appeals the Circuit Court of Taylor County's January 23, 2018, orders sentencing him to an effective term of 182 to 200 years of incarceration following his convictions of burglary, first-degree robbery, and conspiracy. The State of West Virginia, by counsel Caleb A. Ellis, filed a response in support of the circuit court's orders. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) sentencing him to a constitutionally disproportionate sentence, (2) denying his motion for disqualification, (3) granting the State a continuance, (4) admitting evidence of his flight from law enforcement, (5) denying his post-trial motions, and (6) failing to ensure his trial was held in compliance with the "one-term rule." Petitioner also argues that the circuit court plainly erred in failing to give a *Caudill*[1] limiting instruction to the jury and erred cumulatively to his prejudice.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

Petitioner and his codefendant, Michael Ketterman, planned to rob the home of two sisters, Trina Rager and Tina Wilfong, on August 21, 2016, in Taylor County, West Virginia. En route to the robbery, petitioner and Mr. Ketterman stopped at Walmart to buy supplies such as zip ties, gloves, duct tape, and batteries for petitioner's laser sight to his Glock 9 mm pistol. After leaving Walmart, the men proceeded to the victims' home and donned masks; petitioner forced their entry through a back door.

---

[1] *State v. Caudill*, 170 W. Va. 74, 289 S.E.2d 748 (1982).

The men entered the house and found Ms. Rager asleep on the couch. Mr. Ketterman awoke Ms. Rager and put zip ties around her hands. As soon as Mr. Ketterman spoke, Ms. Rager recognized his voice, as they had known each other for several years. Petitioner then entered the bedroom and found Ms. Wilfong asleep. He awoke Ms. Wilfong by pointing a gun in her face, stated that he was the police, and then put zip ties around her hands. Petitioner dragged Ms. Wilfong by her neck through the home while keeping his gun trained at her head and dropped her in a mudroom, causing her to break her leg in three places.

The two men then led Ms. Rager to an outbuilding where the victims kept their safes. After reaching the building, Mr. Ketterman struck Ms. Rager, held a knife to her throat, and instructed her to open one of the safes. Ms. Rager stated that the combination was written down on a piece of paper inside the home. Petitioner put the gun in Ms. Rager's mouth and instructed her to open the safe, and she complied. While petitioner and Mr. Ketterman were distracted with the safe's contents, Ms. Rager escaped and ran to another sister's home to call for help. Mr. Ketterman and petitioner fled at that time.

Days later, after encouragement from his son, Mr. Ketterman surrendered to the police. Petitioner, however, evaded police and eventually led officers on a high-speed car chase. He was ultimately apprehended on August 29, 2016.

On September 12, 2016, petitioner was indicted for one count of burglary, one count of grand larceny, two counts of first-degree robbery, two counts of wanton endangerment involving a firearm, one count of persons prohibited from possessing firearms, two counts of malicious assault, and one count of conspiracy to commit a felony. Petitioner's trial was scheduled to begin in March of 2017, but was continued for unknown reasons. Later in March, petitioner's counsel changed employment and petitioner was granted new counsel. On April 30, 2017, petitioner filed a motion requesting that the circuit court continue his trial, which was scheduled for May 15, 2017, until the next term. The circuit court continued the trial, but to a date later in the same term.

In June of 2017, the State filed a motion requesting to admit evidence regarding petitioner's flight from police and his statements made at that time. At the hearing on the motion, the circuit court heard the testimony of several law enforcement officers, including officers from the Taylor County Sheriff's Department, the Marion County Sheriff's Department, the Fairmont Police Department, the United States Marshals Service, and a parole officer. The evidence established that officers from Taylor County collaborated with officers from Marion County to locate petitioner following the robbery. Officers were able to contact petitioner through his girlfriend and inform him that officers from Taylor County wished to speak to him. Petitioner denied involvement in any crimes that had occurred in Taylor County. Petitioner's parole officer also contacted petitioner and informed him that a warrant had been issued for his arrest due to parole violations. Petitioner declined to turn himself in and was only apprehended and arrested after the high-speed car chase.

The circuit court determined that the evidence regarding petitioner's flight and his statements were admissible. The circuit court found that, after having been informed by his

parole officer of the warrant for his arrest, "[petitioner] was aware of a potential parole violation based in part on the Taylor County warrant and the [petitioner] began fleeing from law enforcement." As such, the evidence of petitioner's flight indicated a guilty conscience or knowledge, or under the circumstances, would indicate a desire to escape to avoid prosecution due to that guilty conscience or knowledge.

On July 10, 2017, one day before petitioner's trial was scheduled to begin, the circuit court held a hearing on the State's motion to continue based upon the collapse of plea negotiations with Mr. Ketterman, who was set to testify against petitioner as part of the agreement.[2] The circuit court granted the State's motion over petitioner's general objection to the continuance as he was prepared for trial the next day. Mr. Ketterman eventually pled guilty via a plea agreement and the trial was ultimately scheduled for October 10, 2017.

The circuit court held a pretrial hearing in September of 2017. Petitioner moved the court to reduce his bond and dismiss the case. The circuit court denied the motions. Shortly before trial was to begin, petitioner filed a motion to disqualify the circuit court judge on the basis of judicial bias, disqualifying relationships with the victims and/or their family, and the fact that the judge directly supervised the special prosecutor's wife through the Taylor County Probation Office. Immediately prior to trial, the circuit court denied the motion, finding that it was not timely filed and was not meritorious. Specifically, the circuit court stated it had no personal or professional knowledge of the victims, and further indicated that it had isolated the special prosecutor's wife from any involvement in the case.

Petitioner's trial commenced on October 10, 2017. On October 12, 2017, petitioner was found guilty of the four remaining crimes charged: two counts of first-degree robbery, one count of burglary, and one count of conspiracy to commit a felony.[3] Because the State intended to file a recidivist information against petitioner, the circuit court deferred sentencing on petitioner's burglary conviction and only sentenced him to ninety years of incarceration for each of his robbery convictions and not less than one nor more than five years of incarceration for his conspiracy to commit a felony conviction. After the State dismissed the recidivist information, the circuit court sentenced petitioner to not less than one nor more than fifteen years of incarceration for his burglary conviction. The circuit court ordered that the sentences be served consecutively. Petitioner's sentences were memorialized in the circuit court's orders dated January 23, 2018. It is from these orders that petitioner appeals.

---

[2]It appears from the record that the county prosecutor withdrew his office from this case shortly thereafter due to allegations that he met with Mr. Ketterman outside the presence of his attorney to discuss plea negotiations. A special prosecutor was brought in to continue the case.

[3]Prior to trial, the circuit court dismissed the counts of persons prohibited from possessing firearms, grand larceny, malicious assault, and wanton endangerment with a firearm upon the State's motion. Certain charges were believed to be lesser included offenses of first-degree robbery.

**Discussion**

I.

On appeal, petitioner first assigns as error the circuit court's order sentencing him to ninety years of incarceration for each of his robbery convictions. According to petitioner, the sentences are unconstitutionally disproportionate to the crimes for which he was convicted. Moreover, petitioner argues that his sentences are extremely disparate to those of his codefendant, Mr. Ketterman, who entered a plea agreement and was sentenced to twenty years and eighty years for his respective robbery convictions.[4] We disagree.

We have held that "'[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 3, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010). However, "[s]entences imposed under statutes providing no upper limits may be contested based upon allegations of violation of the proportionality principles contained in Article III, Section 5 of the West Virginia Constitution." *State v. Tyler*, 211 W. Va. 246, 250, 565 S.E.2d 368, 372 (2002) (citation omitted). Because our first-degree robbery statute contains no upper limit, the Court will undertake a proportionality analysis in this matter. *See* W. Va. Code § 61-2-12 ("Any person who . . . uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.").

There are two tests for determining whether a sentence is so disproportionate to the crime that it violates Article III, Section 5 of the West Virginia Constitution. "The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further." *State v. Adams*, 211 W. Va. 231, 233, 565 S.E.2d 353, 355 (2002) (quoting *State v. Cooper*, 172 W. Va. 266, 272, 304 S.E.2d 851, 857 (1983)). To determine whether a sentence shocks the conscience, this Court considers all of the circumstances surrounding the offense. *Id*. If a sentence is found not to shock the conscience, this Court proceeds to the objective test. *Id*. Under the objective test, to determine whether a sentence violates the proportionality principle, "consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." *Id*. at 232, 565 S.E.2d at 354, syl. pt. 2, in part (quoting syl. pt. 5, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981)).

In this case, petitioner broke into the victims' home, placed zip ties around Ms. Wilfong's hands, and dragged her through the house while training a gun at her head. Petitioner dropped Ms. Wilfong on the floor, causing her leg to break in three places. Moreover, petitioner put a gun

---

[4]Following the end of Mr. Ketterman's twenty-year sentence, the remainder of his sentence is to be suspended and he will be placed on probation for seven years.

in Ms. Rager's mouth and ordered her to open the safe. Petitioner's actions in the commission of the robbery are characterized by extreme violence. His sentences, therefore, do not shock the conscience.

Next, proceeding to the objective test and considering the nature of the offense, we note that we have recognized that "[a]ggravated robbery . . . involves a high potentiality for violence and injury to the victim involved." *Id.* at 234, 565 S.E.2d at 356 (quoting *State v. Ross*, 184 W. Va. 579, 582, 402 S.E.2d 248, 251 (1990)). We have also identified that the sentencing scheme for first-degree robbery serves two purposes: "First, it gives recognition to the seriousness of the offense by imposing a minimum sentence below which a trial court may not go. Second, the open-ended maximum sentencing discretion allows trial courts to consider the weight of aggravating and mitigating factors in each particular case." *Id.* at 234-35, 565 S.E.2d at 356-57 (citation omitted).

We have also previously compared first-degree robbery sentences throughout our state with those imposed in other jurisdictions. Recently, in *State v. Gibbs*, we noted that

> this Court has previously recognized that other jurisdictions permit long prison sentences for first-degree robbery. *See* [*Adams*, 211 W. Va.] at 235, 565 S.E.2d at 357 (citing *State v. Boag*, 104 Ariz. 362, 453 P.2d 508 (1969) (imposing seventy-five to ninety-nine-year sentence); *State v. Victorian*, 332 So.2d 220 (La. 1976) (imposing forty-five-year sentence); *State v. Hoskins*, 522 So.2d 1235 (La. Ct. App. 1988) (imposing ninety-nine-year sentence); *People v. Murph*, 185 Mich.App. 476, 463 N.W.2d 156 (1990) (imposing two forty-six-year sentences); *State v. Morris*, 661 S.W.2d 84 (Mo. Ct. App. 1983) (imposing life sentence); *Robinson v. State*, 743 P.2d 1088 (Okla. Crim. App. 1987) (imposing 100-year sentence)).

238 W. Va. 646, 660, 797 S.E.2d 623, 637 (2017) (quoting *State v. Hill*, No. 16-0138, 2016 WL 6678997, at *2-3 (W. Va. Nov. 14, 2016)(memorandum decision)).

Furthermore, comparing the punishment with other offenses within this jurisdiction, this Court has rejected proportionality challenges in many cases involving first-degree robbery, including some sentences similar to petitioner's sentences of ninety years each. *Adams*, 211 W. Va. at 235, 565 S.E.2d at 357 (citing *State v. Williams*, 205 W. Va. 552, 519 S.E.2d 835 (1999) (upholding fifty-year sentence for attempted aggravated robbery); *State v. Phillips*, 199 W. Va. 507, 485 S.E.2d 676 (1997) (upholding 140-year sentence for two counts of aggravated robbery and one count of kidnapping); *State v. Ross*, 184 W. Va. 579, 402 S.E.2d 248 (1990) (upholding 100-year sentence for attempted aggravated robbery); *State v. Spence*, 182 W. Va. 472, 388 S.E.2d 498 (1989) (upholding sixty-year sentence for aggravated robbery); *State v. England*, 180 W. Va. 342, 376 S.E.2d 548 (1988) (upholding life sentence for aggravated robbery); *State v. Brown*, 177 W. Va. 633, 355 S.E.2d 614 (1987) (upholding sixty-year sentence for aggravated robbery); *State v. Glover*, 177 W. Va. 650, 355 S.E.2d 631 (1987) (upholding seventy-five-year sentence for aggravated robbery)); *see also State v. Booth*, 224 W. Va. 307, 685 S.E.2d 701 (2009) (upholding an eighty-year sentence for first-degree robbery); *State ex rel. Hatcher v. McBride*, 221 W. Va. 760, 656 S.E.2d 789 (2007) (upholding a 212-year sentence for one count

of first-degree robbery). Thus, we find that petitioner's sentences are not disproportionate to the crimes committed.

Finally, while petitioner argues that his two ninety-year determinate sentences are disproportionate to that of his codefendant, who pled guilty to two counts of first-degree robbery and received an effective sentence of twenty years of incarceration followed by seven years of probation[5], we have held that

> [d]isparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age[,] and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

Syl. Pt. 2, *State v. Buck*, 173 W. Va. 243, 314 S.E.2d 406 (1984). Here, we find that petitioner and his codefendant were not similarly situated because petitioner was the individual that forced his way into the home; dragged Ms. Wilfong through the house with a gun to her head and dropped her, causing her to break her leg in three places; and placed his gun in Ms. Rager's mouth. Moreover, Mr. Ketterman turned himself in to the police and cooperated while petitioner fled the authorities, and remained combative and unremorseful throughout the entirety of the proceedings. Therefore, we conclude that petitioner's effective 180-year sentence of incarceration for two counts of first-degree robbery was not unconstitutionally disparate from his codefendant's sentence.

## II.

Petitioner next assigns as error the circuit court's failure to grant his motion for disqualification of the circuit court judge. According to petitioner, the circuit court demonstrated personal bias toward him by giving insufficient consideration to several of his motions and summarily denying the same without permitting the record to be developed. Further, petitioner argues that the circuit court was not impartial because of his relationships with the victims and the special prosecutor's wife. Finally, petitioner avers that the circuit court erred in summarily denying his motion for disqualification without allowing the record to be developed on that matter. We disagree.

---

[5]Mr. Ketterman also pled guilty to conspiracy to commit a felony and was sentenced to not less than one nor more than five years of incarceration for that conviction. This was the same sentence petitioner received for his conviction of this crime. However, Mr. Ketterman's sentence was also to be suspended upon discharge of his twenty-year term of incarceration for one count of robbery.

6

To begin, we note that petitioner's motion for disqualification fails to comply with Rule 17.01 of the West Virginia Trial Court Rules, governing disqualification. One requirement of such motions is that they contain

> a verified certificate of counsel of record or unrepresented party that they have read the motion; that after reasonable inquiry, to the best of their knowledge, information, and belief, it is well grounded in fact and is warranted by either existing law or a good faith argument for the extension, modification, or reversal of existing law; that there is evidence sufficient to support disqualification; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*Id.* Petitioner's certificate of counsel stated that counsel did not believe a good faith argument existed. Indeed, counsel for petitioner stated that "[c]ounsel does not personally believe that such a basis for disqualification exists pursuant to the information available to [c]ounsel" but that he believed he had an ethical obligation to pursue the motion due to petitioner's wishes. Petitioner's accusations of personal bias and the appearance of impropriety lack merit.

While petitioner argues that the circuit court demonstrated bias toward him in denying his motions to reduce his bond amount or dismiss the indictment,[6] the record simply does not support these assertions. In reaching its decision, the circuit court found

> [t]his [crime] is alleged to have been committed with the use of a weapon. It provides that [petitioner] is a convicted felon, had no right to have a weapon, and that he's alleged to have committed malicious assault against one of the victims in the matter, or both of the victims, and breaking the leg of one of the victims.

> So, you can file a motion, but in light of the extremely serious charges and use of a weapon when he was a convicted felon, the [c]ourt doesn't really see it as an excessive bond.

As such, the circuit court set forth proper reasons for denying petitioner's motion to reduce his bond and relied upon that same reasoning in summarily dismissing any of petitioner's subsequent motions to reduce his bond. Accordingly, we find no bias.

Further, when petitioner raised issue with the appearance of impropriety because of the circuit court's alleged relationship with the victims and the wife of the special prosecutor, the circuit court explained

> [j]ust for the record, this court has no knowledge of these two ladies that are the victims in the case. They were involved in a civil action here a few years ago. I

---

[6]Petitioner alleged that the indictment should have been dismissed for failure to timely hold the trial. We disagree and more fully discuss below the "one-term rule" petitioner raises.

7

don't know these two ladies personally. I never had, to my knowledge, any involvement with them personally or professionally.

And there was an issue of [the special prosecutor's wife] being a probation officer. She has been my probation officer relatively recently. The court has isolated her from any involvement in this case, or in Mr. Ketterman's case, and has directed the other probation officers to have no involvement or contact or discussion with her about the case. And so the disqualification motions are denied.

Therefore, there was no basis for petitioner's accusations of impropriety. While petitioner alleges that there was evidence regarding a personal or financial relationship between the circuit court judge and the victims' family, he fails to offer any such evidence. Indeed, the record fails to establish that petitioner ever requested the opportunity to proffer what evidence of these relationships he could have presented. Accordingly, we decline to find error in this regard.

### III.

Next, petitioner argues that the circuit court erred in granting the State a continuance following the collapse of plea negotiations with Mr. Ketterman.[7] Petitioner argues that the plea negotiations collapsed due to the first prosecutor's improper conduct in meeting with Mr. Ketterman outside the presence of his attorney. According to petitioner, the circuit court should not have rewarded the State's outright misconduct by granting a continuance. Moreover, petitioner alleges that he was prejudiced because, had the matter proceeded to trial, Mr. Ketterman likely would not have testified against him as he would not have entered a plea agreement at that point, choosing instead to invoke his rights under the Fifth Amendment of the United States Constitution.[8] We find no merit in petitioner's arguments.

Whether a party should be granted a continuance is a matter left to the discretion of the trial judge, and a reviewing court plays a limited and restricted role in overseeing the lower court's exercise of that discretion. *See* syl. pt. 2, *State v. Bush*, 163 W. Va. 168, 255 S.E.2d 539 (1979); *Wallis v. Wallis*, 196 W. Va. 49, 468 S.E.2d 181 (1996). In Syllabus Point 2 of *Nutter v. Maynard*, 183 W. Va. 247, 395 S.E.2d 491 (1990), we held that:

> "'It is well settled as a general rule that the question of continuance is in the sound discretion of the trial court, which will not be reviewed by the appellate court, except in case it clearly appears that such discretion has been

---

[7] We note that petitioner only generally objected to the State's motion to continue. Additionally, to the extent petitioner argues that this continuance denied him his right to a speedy trial, we disagree for reasons more fully discussed below.

[8] This particular argument was never raised below.

abused.' Syl. Pt. 1, *Levy v. Scottish Union & National Ins. Co.*, 58 W.Va. 546, 52 S.E. 449 (1905)."

Further, in reviewing matters such as this, we have held that

> "[w]hether there has been an abuse of discretion in denying a continuance must be decided on a case-by-case basis in light of the factual circumstances presented, particularly the reasons for the continuance that were presented to the trial court at the time the request was denied." Syllabus Point 3, *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979).

Syl. Pt. 4, *Hamilton v. Ravasio*, 192 W. Va. 183, 451 S.E.2d 749 (1994). This rule extends to cases such as the instant matter. *See* Syl. Pt. 1, *State v. Chaffin*, 156 W. Va. 264, 192 S.E.2d 728 (1972) (holding that "[a] motion for a continuance based on the absence of a material witness is addressed to the sound discretion of the trial court, and its ruling on such motion will not be disturbed unless it is clearly wrong and it appears that such discretion has been abused").

This Court has previously set forth specific guidelines for circuit courts to follow when addressing requests for continuances based upon an unavailable witness. Specifically, we noted four criteria that must be met by a party seeking a continuance on the grounds that a material witness is unavailable:

> "A party moving for a continuance due to the unavailability of a witness must show: (1) the materiality and importance of the witness to the issues to be tried; (2) due diligence in an attempt to procure the attendance of the witness; (3) that a good possibility exists that the testimony will be secured at some later date; and (4) that the postponement would not be likely to cause an unreasonable delay or disruption in the orderly process of justice."

Syl. Pt. 4, *State v. McCallister*, 178 W. Va. 77, 357 S.E.2d 759 (1987).

Turning to the first criteria, we find that Mr. Ketterman was a material and important witness due to the fact that he participated in the crime with petitioner and, naturally, could provide information critical to petitioner's involvement in the crime. Second, the record indicates that the State and Mr. Ketterman had been discussing plea agreements as early as October of 2016; however, the agreement was not put into writing until a few weeks prior to petitioner's trial. Approximately one week prior to petitioner's trial, the circuit court declined to accept Mr. Ketterman's plea agreement after he expressed feelings of concern and coercion following a meeting with the prosecutor outside the presence of his attorney. In order to resolve the matter, the circuit court continued Mr. Ketterman's proceedings to allow him to decide whether he wanted to proceed with his guilty plea. As such, the State requested a continuance in order to finalize plea negotiations with Mr. Ketterman and secure his testimony against petitioner. Accordingly, it appears that the State did actively seek Mr. Ketterman's attendance and was not attempting to delay the proceedings, but was caught off guard by the collapse in negotiations. Third, in requesting the continuance, the State explained that Mr. Ketterman still wished to plead guilty and that it anticipated securing his testimony against petitioner when that issue was

9

resolved, demonstrating that a good possibility existed that his testimony would be secured quickly. Finally, the postponement did not appear to be likely to cause an unreasonable delay as the trial was later scheduled to begin in August of 2017, approximately one month later.[9]

To the extent that petitioner argues that the circuit court erred in granting the continuance in light of the State's deliberate misconduct in meeting with Mr. Ketterman outside the presence of his attorney, we note that the record does not entirely support his arguments. Indeed, the transcript from Mr. Ketterman's hearing indicates that his counsel was aware of and consented to the meeting between the prosecutor and Mr. Ketterman. Further, his counsel was reached by phone several times during the meeting to clarify issues for Mr. Ketterman and provide advice. Without deciding the propriety of these actions, we note that petitioner's characterization of the prosecutor's conduct as deliberately seeking to confuse or trick Mr. Ketterman is inaccurate. Further, petitioner's allegations of prejudice are speculative. Petitioner argues that had the circuit court ordered that the trial continue as scheduled, Mr. Ketterman likely would have invoked his Fifth Amendment right and refused to testify to avoid incriminating himself absent his plea agreement. However, petitioner has no factual basis for this argument and merely speculates about the prejudice he suffered as a result of continuing the proceedings. Lastly, we note that petitioner did not raise any issue with allowing Mr. Ketterman to testify as a result of the continuance during the proceedings below. In his motion for a new trial, petitioner simply accused Mr. Ketterman of perjuring himself and did not reference the prejudice he allegedly suffered due to the continuance of the matter to secure Mr. Ketterman's testimony. We have previously held "that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (citing *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)). Based on the foregoing, we find that the circuit court did not abuse its discretion in continuing the trial to permit the State to obtain Mr. Ketterman's testimony when the criteria set forth in *McCallister* were met.

IV.

Petitioner's fourth assignment of error alleges that the circuit court erred in admitting evidence of his flight from law enforcement. Petitioner alleges that he had other "legal entanglements" threatening to lead to his arrest at the time and, as such, the State could not prove a guilty state of mind in relation to the instant crime. Further, admitting evidence of his flight was extremely prejudicial and had little probative value due to his motive to flee for these other reasons. We do not agree.

Our law governing the admission of flight evidence is well-settled. This Court has held as follows:

> In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or

---

[9]The trial was later continued again due to unrelated reasons.

10

knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect.

Syl. Pt. 6, *State v. Payne*, 167 W. Va. 252, 280 S.E.2d 72 (1981). We further stated that

[i]n considering whether the facts and circumstances of the case indicate a guilty conscience or knowledge, the trial judge should consider whether the defendant was aware of the charges pending against him at the time he fled; was aware that he was a suspect at the time he fled; or fled the scene of a crime under circumstances that would indicate a guilty conscience or knowledge; or otherwise fled under circumstances such that would indicate a desire to escape or avoid prosecution due to a guilty conscience or knowledge.

*Id.* at 267, 280 S.E.2d at 81.

In the present case, consistent with *Payne*, the circuit court held a hearing regarding the flight evidence at issue. At the hearing, testimony established that officers spoke to petitioner on the same day as the robbery and informed him that officers from Taylor County wished to speak to him. Petitioner was informed that the police were looking for Mr. Ketterman as well. Petitioner refused to speak with the officers, stated he had no knowledge of any crimes in Taylor County, and further reported that he did not trust police officers. On the day following the robbery, officers contacted petitioner's probation officer, who also attempted to reach petitioner. Upon speaking with petitioner, the probation officer informed him that a warrant for his arrest had been issued due to parole violations. Petitioner again refused to turn himself in. When petitioner was located several days later, he led officers on a high-speed car chase and was only apprehended after his car was wrecked. This evidence demonstrates that, as early as the day of the robbery, petitioner knew that officers desired to speak to him in connection with an incident involving Mr. Ketterman in Taylor County, and that he was later made aware that a warrant had been issued for his arrest due to parole violations, yet he refused to turn himself in or speak to officers. As the circuit court found, "[a]t that point, [petitioner] was aware of a potential parole violation based in part on the Taylor County warrant and the [petitioner] began fleeing from law enforcement." We find petitioner's argument that he had motive to flee for other "legal entanglements" unpersuasive given the conversation petitioner had with Taylor County officers the same day as the robbery and his immediate refusal to speak to them. Accordingly, we find no error in the circuit court's conclusion that the evidence of flight was more probative than prejudicial, and further find that the same was properly admitted.[10]

V.

---

[10]We also note that the circuit court gave the jury a limiting instruction regarding the evidence of flight.

11

Petitioner next argues that the circuit court erred in denying his post-trial motions requesting relief based upon the alleged perjured testimony of multiple State witnesses. According to petitioner, both a law enforcement officer and either Mr. Ketterman or the victims lied during their testimony and, absent said testimony, there was insufficient evidence to support his convictions. Specifically, petitioner argues that Mr. Ketterman's testimony was contradictory to the testimony of the victims, indicating that someone was lying. Further, petitioner avers that the officer lied about a portion of his investigation, and that his testimony was deceptive and wrongfully bolstered Mr. Ketterman's testimony. We find no merit in petitioner's argument.

This Court has previously recognized that "[i]t is a basic principle of law that '[p]rosecutors have a duty to the court not to knowingly encourage or present false testimony.'" *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 378-79, 701 S.E.2d 97, 100-01 (2009) (quoting *State v. Rivera*, 210 Ariz. 188, 109 P.3d 83, 89 (2005)). We have also previously held that "[a]lthough it is a violation of due process for the State to convict a defendant based on false evidence, such conviction will not be set aside unless it is shown that the false evidence had a material effect on the jury verdict." *Id.* at 379, 701 S.E.2d at 101 (quoting syl. pt. 2, *In re Investigation of W. Va. State Police Crime Lab., Serology Div.*, 190 W. Va. 321, 438 S.E.2d 501 (1993)). To succeed in a claim that the State knowingly presented false testimony at trial, a defendant "must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict." *Id.* at 376, 701 S.E.2d at 98, syl. pt. 2, in part.

We first address petitioner's claim that the State knowingly presented the false testimony of either Mr. Ketterman or the victims. According to petitioner, the victims presented testimony that directly contradicted Mr. Ketterman's testimony regarding who initially stated an intention to kill the victims. Petitioner avers that the State "had to have known that one or more of its witnesses were lying" based on the fact that Mr. Ketterman testified after Ms. Rager but before Ms. Wilfong. However, "[i]nconsistencies between a witness's trial testimony and their previous statements, or between the testimonies of multiple witnesses, do not necessarily demonstrate falsity." *Flack v. Ballard*, 239 W. Va. 566, 581, 803 S.E.2d 536, 551 (2017). We have long held that "[i]t [is] the role of the jury to weigh the evidence and make credibility assessments after it observed the witnesses and heard their testimony." *Franklin*, 226 W. Va. at 381, 701 S.E.2d at 103 (quoting *State v. Brown*, 210 W. Va. 14, 27, 552 S.E.2d 390, 403 (2001)); *see also* syl. pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) ("Credibility determinations are for a jury and not an appellate court."). Here, petitioner fails to meet the factors set forth in *Franklin*. Mere inconsistencies in the testimony presented by the victims and Mr. Ketterman are insufficient to prove that the State knowingly presented false testimony. Further, petitioner's contention that "there can be no doubt" as to the material, prejudicial nature of this inconsistent testimony is unpersuasive in light of the uncontroverted evidence that petitioner threatened the victims with a gun and broke Ms. Wilfong's leg during the robbery. The jury heard the conflicting testimony and ultimately made credibility assessments in determining who they believed. Accordingly, we decline to find that petitioner is entitled to relief in this regard.

We also find no merit in petitioner's claim that the State knowingly presented the false testimony of a law enforcement officer. Specifically, petitioner relies on a portion of the trial transcript wherein the officer testified that he went to Walmart to obtain surveillance footage, but

then, only moments later, retracted the statement and stated that he did not go to Walmart. According to petitioner, the officer's retracting his statement indicated that he lied about his actions and further suggested "the lie is worse and deeper than it first appears." When questioned about why he did not go to Walmart to obtain the footage, the officer testified that he had been ordered not to do so by the circuit court in relation to the incident wherein information was obtained from Mr. Ketterman outside the presence of his attorney. However, petitioner avers that the circuit court did not issue that instruction until several days after the information regarding the Walmart trip was disclosed and, as such, the officer must have been lying to justify his "actual inaction by falsely blaming the [c]ircuit [c]ourt." Petitioner's claims regarding the officer's testimony also fail under *Franklin*. First, the record does not definitively establish that the officer intentionally falsely testified. Rather, petitioner assumes deceitful intent on the officer's part when he stated that he had not gone to Walmart as he previously stated. In fact, the transcript demonstrates that the officer corrected his statements nearly immediately after he made them. Second, it was petitioner's counsel, not the State, who originally elicited the complained-of inconsistent statements, and petitioner fails to demonstrate that the prosecutor knowingly affirmatively presented false testimony. Finally, petitioner fails to demonstrate that this exchange had a material effect on the jury. While petitioner suggests that the officer's testimony bolsters and corroborates Mr. Ketterman's testimony, the record demonstrates that the discussion was brief and did not bolster Mr. Ketterman's testimony that he and petitioner went to Walmart prior to the robbery as the officer testified that he was not able to confirm those allegations with surveillance footage from Walmart. As such, we find that petitioner is entitled to no relief in this regard.

VI.

Petitioner's sixth assignment of error alleges that the circuit court erred in failing to ensure that petitioner was tried in compliance with the one-term rule.[11] According to petitioner, his right to a speedy trial was violated on three occasions: the September of 2016 term, the January of 2017 term, and the April of 2017 term. Regarding the September of 2016 term, petitioner avers that "the only things that happened . . . were [p]etitioner's indictment, his arraignment, and the filing of an omnibus discovery motion by his original defense counsel." Petitioner asserts that the arraignment transcript demonstrates that the circuit court scheduled his trial for February of 2017 without attempting to schedule within the term of the indictment or showing good cause. Regarding the January of 2017 term, petitioner argues that the trial was not held as scheduled and the record contains no reason for the delay, except for the State's brief excuse that the trial "was called off. . ." and subsequently set for May of 2017. Finally, petitioner states that the trial was continued from the April of 2017 term to the September of 2017 term based upon a scheduling conflict with the State. Upon our review, we find that petitioner is entitled to no relief in this regard.

---

[11]Rule 2.19 of the West Virginia Trial Court Rules establishes that the circuit court terms in Taylor County begin on the second Monday in January, April, and September.

This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's "clearly erroneous" standard of review is invoked concerning the circuit court's findings of fact.

Syl. Pt. 1, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009).

Petitioner concedes that his constitutional right to a speedy trial pursuant to West Virginia Code § 62-3-21 was not violated.[12] However, he does claim that his statutory right to a trial within the same term as his indictment pursuant to West Virginia Code § 62-3-1 was violated. West Virginia Code § 62-3-1 provides that "[w]hen an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term."

We have previously held, however,

that the protection afforded by this rule is not self-operating and that "the burden is properly upon the defendant to make a record if he is to assert this right or assign error to its denial." *State ex rel. Workman v. Fury*, 168 W.Va. [218,] 221, 283 S.E.2d [851,] 853 [(1981)]. Our decision in *Good v. Handlan*, 176 W.Va. [145,] 151, 342 S.E.2d [111,] 116, [(1986)] makes it clear that a defendant must assert his speedy trial right under the one-term rule by a timely written motion: "[A] defendant can assert his right to a prompt trial under W.Va. Code, 62-3-1, after the term in which the indictment is returned provided that he makes a timely motion for the same." (Footnote omitted). Where such a motion is not timely made, a defendant's speedy trial rights are governed by the limitations imposed by Article III, Section 14 of the West Virginia Constitution and our three-term rule, W.Va. Code 62-3-21.

*Keller v. Ferguson*, 177 W. Va. 616, 618-19, 355 S.E.2d 405, 407 (1987).

In Syllabus Point 2 of *State ex rel. Shorter v. Hey*, 170 W. Va. 249, 294 S.E.2d 51 (1981), this Court explained that:

---

[12]West Virginia Code § 62-3-21 sets forth that, unless certain circumstances apply,

[e]very person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial.

The determination of what is good cause, pursuant to *W.Va. Code*, 62-3-1, for a continuance of a trial beyond the term of indictment is in the sound discretion of the trial court, and when good cause is determined a trial court may, pursuant to *W.Va. Code*, 62-3-1, grant a continuance of a trial beyond the term of indictment at the request of either the prosecutor or defense, or upon the court's own motion.

Lastly, in discussing a remedy, this Court has noted that

if a criminal case is continued pursuant to W.Va. Code, 62-3-1, for good cause from the term of indictment to the next term, and during that latter term the defendant is not tried because of a continuance by the State, nothing in the provisions of W.Va. Code, 62-3-1, would entitle the defendant to discharge from prosecution. . . . The Legislature did not provide in W.Va. Code, 62-3-1, the remedy of discharge from prosecution.

*State v. Halstead*, No. 16-0125, 2017 WL 656994, at *3 (W. Va. Feb. 17, 2017)(memorandum decision) (citing *Shorter*, 170 W. Va. at 254–57, 294 S.E.2d at 56–59).

Here, the grant of a continuance beyond the original term of court was granted for good cause without objection by either party. While petitioner complains that the circuit court set the matter for trial in February of 2017 without good cause, the record demonstrates that, at the arraignment, the court granted petitioner thirty days to complete discovery and file any motions necessary. Indeed, petitioner utilized this time to file an omnibus discovery motion in October of 2017. Accordingly, we find no error in the circuit court's decision to continue the matter from the term of the indictment given the fact that petitioner was granted this time to participate in discovery.

We likewise find no error in the circuit court's decision to continue the matter from the January of 2017 term. As mentioned above, "[a] defendant can assert his right to a prompt trial under W.Va. Code, 62-3-1, after the term in which the indictment is returned provided that he makes a timely motion for the same." *Good*, 176 W. Va. at 151, 342 S.E.2d at 116. Here, the record does not demonstrate that petitioner filed a written motion requesting that the matter proceed to trial in the January of 2017 term. Rather, when asked if petitioner had any outstanding motions that needed addressed, counsel for petitioner responded "[n]ot at this time." While it is true that petitioner's counsel stated that he was ready to proceed to trial whenever the circuit court was ready, mere mention of the readiness to proceed to trial does not invoke the one-term rule. *See State v. Sanchez*, No. 11-0314, 2011 WL 8199161, at *2 (W. Va. Oct. 21, 2011)(memorandum decision) (finding that counsel's request to preserve the defendant's right to a speedy trial did not invoke the one-term rule absent a written motion specifically seeking a trial during that same term). Importantly, petitioner did not object to the continuance of the trial to the next term.

Lastly, we find no error in the circuit court's continuance of the trial from the April of 2017 term to the September of 2017 term. Again, petitioner failed to file a written motion requesting that the matter proceed to trial in that term. Indeed, petitioner filed a motion in April

of 2017 requesting that the matter be continued to the next term of court. The circuit court granted the motion but scheduled the matter for July of 2017, within the April term. Petitioner reiterated his request for more time and stated that August would be preferable to July. As such, petitioner's complaint that the circuit court wrongfully continued the matter from July of 2017 to the September of 2017 term is disingenuous in light of his requests for more time. Although petitioner later orally expressed that he wished to proceed to trial in that term, he did not file a written motion on the same.

In sum, we find no error in the circuit court's decision to continue petitioner's trial in each of the complained-of terms. Petitioner only filed one written motion seeking that the indictment be dismissed for failure to prosecute in September of 2017, the term in which he was ultimately tried. The record demonstrates sound reasons for continuing petitioner's trial in each term and we find no abuse of discretion regarding the same.

VII.

Petitioner also argues that the circuit court plainly erred in failing to provide a *Caudill* limiting instruction to the jury based upon the mention of Mr. Ketterman's guilty plea regarding the robbery. While petitioner concedes that he did not request a limiting instruction, he argues that this Court has previously endorsed the law of other jurisdictions that indicate plain error can be triggered where aggravating circumstances exist despite the defendant's failure to request a *Caudill* instruction.[13] Here, petitioner only cites to one instance wherein Mr. Ketterman's guilty plea was referenced, which occurred during voir dire. He avers that it was particularly prejudicial in that it was the circuit court who referenced the guilty plea and, as such, a sua sponte *Caudill* instruction was necessary. Having reviewed the evidence, we find no error.

---

[13]*State v. Flack*, 232 W. Va. 708, 713, 753 S.E.2d 761, 763 (2013), contains the following discussion:

> [o]rdinarily, when the jury learns of a codefendant's guilt for the same or similar offenses, and the defense counsel does not request that a curative instruction be given, the failure of the trial judge to give one will not require reversal. *United States v. Beasley*, 519 F.2d [233] at 240 [(5th Cir. 1975)]. Only in those rare situations in which other "aggravating circumstances" have exacerbated the prejudice will the failure to give cautionary instructions result in plain and reversible error. *See e.g.*, *United States v. Harrell*, 436 F.2d 606, 617 (5th Cir. 1970) (court's conclusion of plain error was specifically predicated upon both aggravating circumstances and the absence of any cautionary instructions, as well as the lack of defense objections).

(quoting *United States v. DeLucca*, 630 F.2d 294, 299 (5th Cir. 1980)). Here, petitioner avers that the aggravating circumstances in this case involve the circuit court's improper admission of petitioner's flight and the false testimony of the State's witnesses.

16

We have held that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

In *Caudill* we held that,

> [i]n a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the crime charged against a defendant where such testimony is not for the purpose of proving the guilt of the defendant and is relevant to the issue of the witness-accomplice's credibility. The failure by a trial judge to give a jury instruction so limiting such testimony is, however, reversible error.

170 W. Va. at 75, 289 S.E.2d at 749, syl. pt. 3. However, we later modified that ruling to require a defendant to move for such limiting instruction:

> [a]n accomplice who has entered a plea of guilty to the same crime charged against the defendant may testify as a witness on behalf of the State. However, if the jury learns of the accomplice's guilty plea, then upon the motion of the defendant, the trial court must instruct the jury that the accomplice's plea of guilty cannot be considered as proving the guilt of the defendant, and may only be considered for proper evidentiary purposes such as to impeach trial testimony or to reflect on a witness' credibility. The failure of the trial court, upon request, to give such a limiting jury instruction is reversible error. To the extent that Syllabus Point 3 of *State v. Caudill*, 170 W.Va. 74, 289 S.E.2d 748 (1982) is inconsistent, it is hereby modified.

*Flack*, 232 W. Va. at 709, 753 S.E.2d at 763, syl. In *Flack*, we recognized that "[d]efense counsel may have ample reason to get beyond an accomplice's damaging testimony as quickly as possible. Whether the trial court should instruct the jury how the accomplice's testimony could, or could not, be considered is a matter best left to the discretion of defense counsel." *Id.* at 714, 753 S.E.2d at 767.

Petitioner's argument fails for several reasons. First, his argument fails because we have already established that there was no error in the circuit court's decision to admit evidence of petitioner's flight and that petitioner failed to demonstrate that the State knowingly presented false testimony. Accordingly, there are no aggravated circumstances that warrant invoking a plain error review. Moreover, petitioner fails to demonstrate that this alleged error was plain because, as shown above, his defense counsel may have had ample strategic reason for declining to request a *Caudill* instruction. Finally, petitioner cites to only one instance in the record wherein the circuit court referenced Mr. Ketterman's guilty plea. Specifically, during voir dire the circuit court posited the following question:

> Now, [Mr.] Ketterman Sr. has previously entered guilty pleas to the armed robberies pertaining to these two women. And it's anticipated that he's going to

come in here to testify as to his knowledge of this affair. And by virtue of him coming in to testify, when he does he could be wearing jail attire. Would that cause any of you to favor one side or the other in this case?

This exchange does not demonstrate prejudice against petitioner such that the proceedings were unfair. Similar to our findings in *Flack*, we find that the circuit court here did not seek to imply, nor would the jurors have reasonably inferred from the statement, that petitioner was guilty by virtue of Mr. Ketterman's guilty plea. *See Flack*, 232 W. Va. at 714, 753 S.E.2d at 767 ("There was no evidence that the prosecutor sought to infer the defendant's guilt by virtue of Montgomery's guilty plea, nor was there evidence of any aggravating circumstances surrounding Montgomery's testimony."). Having reviewed the evidence, we find that petitioner failed to demonstrate that his defense counsel's decision to not request a limiting instruction, and the circuit court's "failure" to sua sponte give the same, was prejudicial. We further find that he is entitled to no relief in this regard.

## VIII.

Petitioner's final assignment of error is that he was unfairly prejudiced as a result of the cumulative effect of the circuit court's errors. "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 5, *State v. Smith*, 156 W. Va. 385, 193 S.E.2d 550 (1972). As the above discussion indicates, the circuit court did not make "numerous errors" such as would implicate the cumulative error doctrine. *See State v. Knuckles*, 196 W. Va. 416, 426, 473 S.E.2d 131, 141 (1996) ("Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."). Accordingly, petitioner's final assignment of error has no merit.

## Conclusion

For the foregoing reasons, we affirm the circuit court's January 23, 2018, sentencing orders.

Affirmed.

**ISSUED:** March 15, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison